# Exhibit 2

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT
                                                  DOCKET NO.1881CV00343

|  |  |
|---|---|
| BRIAN HULT, an individual | \| |
| and | \| |
| FIONA HULT, an individual | \| |
| Plaintiffs | \| |
| | \| |
| v. | \| |
| | \| |
| DANIELE INTERNATIONAL, | \| |
| a Rhode Island corporation | \| |
| | \| |
| Defendant | \| |

**FIRST AMENDED
COMMPLAINT
AND JURY DEMAND**

Plaintiffs BRIAN HULT AND FIONA HULT, by and through their undersigned counsel, FRANCOEUR LAW OFFICE, as and for their Complaint against Defendant, DANIELE INTERNATIONAL, INC., hereby allege as follows:

1.     Plaintiff Brian Hult is an individual who resides at 73 Randall Road, Chelmsford, Massachusetts. He has been diagnosed with life-threatening food allergies to milk products. Exposure to milk can cause him to experience anaphylaxis which can result in shock and ultimately death.

2.     Plaintiff Fiona Hult is the wife of Brian Hult. She resides with Mr. Hult at 73 Randall Road, Chelmsford, Massachusetts.

3.     Defendant Daniele International, Inc. is a Rhode Island corporation with a business address of 105 Davis Drive, P.O. Box 106, Pascoag, RI 02859.

4.     On January 3, 2017, Mr. Brian Hult was at work at Cabot Corporation in Billerica, Massachusetts, and ate a sandwich for lunch that his wife had packed for him. In the

1

sandwich was Italian deli meat packaged by Daniele Inc. and sold at his local Market Basket grocery store in Chelmsford, Massachusetts. A copy of the label on the packaging is attached hereto as Exhibit A.

5.      His wife, Mrs. Fiona Hult, had purchased the meat a few days before but this was the first time Mr. Hult had consumed the meat. She and her husband keep a strict milk-free home, and she purchased the deli meat because it did not indicate that it contained milk or milk products.

6.      Shortly after taking a few bites of the sandwich with the meat inside, Mr. Hult experienced an anaphylactic reaction.

7.      He tried to summon help and walked to the lobby of his office. He attempted to call his wife but his throat began closing.

8.      He was eventually taken by ambulance to Lahey Clinic in Burlington, Massachusetts, where he was treated for anaphylaxis.

9.      In the emergency room, Mr. Hult was given multiple doses of epinephrine from an injectable device. However, the medication did not abate his symptoms and he was placed on an intravenous drip of epinephrine.

10.      He was then transported to the intensive care unit because the doctors could not control his reaction, even when they tried to adjust the medication dose. He remained in ICU for three days on a constant drip of epinephrine while his symptoms waxed and waned.

11.      Mr. Hult experienced a common aspect of an allergic reaction known as a "biphasic reaction," a secondary allergic reaction, which can occur several hours after the body's initial reaction and can be more severe and difficult to treat.  This secondary reaction occurs without further exposure to the allergen. This took several days to control.

12.     An intubation kit was prepared and on standby beside Brian's bed in ICU because it was feared Brian may have to be intubated in a hurry because the biphasic reaction was so severe and difficult to treat.

13.     He was released with a steroid taper after 4 days in the hospital and followed up with his allergist.

14.     He has suffered severe emotional trauma from the reaction, as he thought he was going to die.

15.     The package with the meat ingested by Mr. Hult did not indicate that it contained milk. See Exhibit A.

16.     However, the package did list "sodium caseinate" as an ingredient.

17.     Sodium caseinate is the biochemical name for casein, which is a type of protein found in the milk from all mammals.[1]

18.     Because the term "sodium caseinate" does not obviously indicate that it contains milk, the federal allergen labeling laws, specifically the Food Allergen Labeling and Consumer Protection Act of 2004 ("FALCPA"), require that the words "contains milk" be included on a label when sodium caseinate is an ingredient. 21 U.S.C. 343(w).

19.     In general, FALCPA, an amendment to the Federal Food, Drug, and Cosmetic Act, requires that the label of a food that contains an ingredient that is or contains protein from a "major food allergen " declare the presence of the allergen in the manner described by the law. Id.

20.     FALCPA requires processed foods that contain one of the top eight allergens (including milk protein) to list in clear language the presence of the allergen. In the case at bar,

---

[1] https://www.livestrong.com/article/495564-what-is-sodium-caseinate/

the FALCPA would require the label of the Defendant's package to contain the word "milk." See 21 U.S.C. 343(w).

21.     Even though the product in question is a meat product, it is nevertheless controlled by FALCPA because it is processed. FALCPA only exempts "raw agriculture commodities" from its allergen labeling requirements. 21 U.S.C. 343(w)(1). For example, the Food and Drug Administration has issued several recalls for processed meat products that were not labeled in accordance with FALCPA. See attached Exhibit B.

22.     The Defendant's product was a cured, refined meat product, not a raw commodity. Therefore, the Defendant's product is subject to the FALCPA and as such, was misbranded for failing to list the allergen milk.

## CLAIM I – BREACH OF IMPLIED WARRANTY

23.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

24.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Italian Brand Gourmet Pack meat did not contain milk or dairy products.

25.     Defendant breached the warranty implied in the contract for the sale of Italian Brand Gourmet Pack because it could not pass without objection in the trade under the contract description, and the goods were unfit for their intended and ordinary purpose because the meat did not warn consumers that it contained dairy.

26.     As a result, Plaintiff did not receive the goods as impliedly warranted by Defendant to be merchantable.

4

27.     Plaintiffs purchased Italian Brand Gourmet Pack in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose that it was safe for consumers with dairy allergies.

28.     Italian Brand Gourmet Pack was not altered by Plaintiff.

29.     Italian Brand Gourmet Pack was defective when it left the exclusive control of Defendant.

30.     Defendant knew that Italian Brand Gourmet Pack would be purchased and used without additional testing by Plaintiff.

31.     Italian Brand Gourmet Pack was defectively designed and unfit for its intended purpose, and Plaintiffs did not receive the goods as warranted.

32.     As a direct and proximate cause of Defendant's breach of warranty, Plaintiffs have been injured and harmed because they would not have purchased Italian Brand Gourmet Pack if they had known it did, in fact, contain dairy.

## CLAIM II – NEGLIGENT MISREPRESENTATION

33.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

34.     Defendant failed to disclose that Italian Brand Gourmet Pack contained a dairy ingredient.

35.     Defendant had a duty to disclose this information. The FALCPA, an amendment to the Federal Food, Drug, and Cosmetic Act, requires that the label of a food that contains an ingredient that is or contains protein from a "major food allergen " declare the presence of the allergen in the manner described by the law. Because the Defendant's product is processed and is not a "raw agriculture commodity," Defendant must comply with the labeling requirements of FALCPA.

36.     At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

37.     At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about Italian Brand Gourmet Pack. The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs to purchase Italian Brand Gourmet Pack.

38.     Plaintiffs would not have purchased Italian Brand Gourmet Pack if the true facts had been known.

39.     The negligent actions of Defendant caused damage to Plaintiffs, who are entitled to damages and other legal and equitable relief as a result.

## CLAIM III- FAILURE TO WARN

40.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

41.     Defendant, as the manufacturer of the Italian Gourmet Brand Pack, owed a duty to Plaintiff to provide an adequate warning of the latent dangers arising from the normal and intended use of the product.

42.     Defendant knew or should have known that an ingredient that consisted of a milk product would pose a life-threatening risk to persons with food allergies.

43.     Defendant manufacturer could have followed best practices by using the word "milk" thus warning consumers of the hidden danger. However, Defendant chose not to reveal the danger.

6

44.     A reasonable person would not know that "sodium caseinate" contained milk. Aware that the average consumer would not know this fact, the FALCPA mandates that manufacturers use the word "milk" to describe sodium caseinate.

45.     The danger of milk being present in the ingredient would not have been obvious to the average consumer.

46.     As a result of the Defendant's actions, the Plaintiffs have suffered physical injury and extreme emotional distress.

## CLAIM IV – VIOLATION OF M.G.L. 93A, THE CONSUMER PROTECTION STATUTE

47.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

48.     At all times relevant to this action, M.G. L. c. 93A, et seq., has been in full force and effect and has applied to Defendant's conduct.

49.     On September 25, 2017, Plaintiffs sent a demand letter pursuant to M.G.L. c. 93A § by both first class and registered mail to the Defendant.

50.     Defendant engaged in unfair and deceptive business practices by knowingly manufacturing and putting into interstate commerce a product that contained milk but failing to label it as such.

51.     The actions of the Defendant, by failing to disclose a major allergen in their product, were misleading and were a material part of the transaction. If the Plaintiffs had known the Italian Brand Gourmet Pack contained dairy, they would have refrained from purchasing and consuming it. Instead, they relied on the label made by the Defendant that assured them the food would be safe.

52.     As a direct result of Defendant's actions, the Plaintiffs have suffered both physical and emotional harm and continue to suffer physical and emotional harm.

7

## CLAIM V –LOSS OF CONSORTIUM

53.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

54.     Plaintiff Fiona Hult is the lawful spouse of Plaintiff Brian Hult.

55.     The actions of the Defendant caused serious harm to Plaintiff Brian Hult.

56.     As a direct result of the actions of the Defendant, Plaintiff Fiona Hult was deprived of the companionship and support of her husband and was deprived of the full enjoyment of the marital relationship with her husband.

57.     Defendant is responsible for the Plaintiff Fiona Hult's loss of consortium with her husband.

## CLAIM VI –INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

58.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

59.     Defendant knew that its product contained a major food allergen – namely, milk protein.

60.     Defendant failed to disclose that its product contained a major allergen.

61.     Defendant's conduct was extreme and outrageous.

62.     Defendant knew or should have known that its conduct was likely to cause Plaintiffs severe emotional distress, did cause such severe emotional distress when Plaintiff Brian Hult experienced a life-threatening allergic reaction, and continues to cause emotional distress.

63.     Plaintiffs also suffered physical harm as a result of Defendant's conduct.

64.     Defendant had no right or excuse to engage in such conduct.

65.     Plaintiffs did not consent to Defendant's conduct.

8

## CLAIM VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

66.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

67.     Defendant owed a duty of care to Plaintiff in taking reasonable precautions to warn the consumer that their product contained a major allergen.

68.     Defendant breached this duty of care by placing a product with a known allergen into the marketplace and failing to disclose the presence of the allergen.

69.     Plaintiffs were in the zone of danger because they were consumers of the Defendant's product.

70.     It was foreseeable that Defendant's breach of duty would result in physical harm and severe emotional distress.  A reasonable person would have suffered such harm under the circumstances present in this case.

71.     Defendant's breach of duty caused Plaintiff Brian Hult to come into contact with milk protein that proximately caused him severe emotional distress and physical harm.  He feared for his life and suffered an allergic reaction that required emergency medical care treatment.

72.     Defendant had no privilege or excuse for its conduct.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court provide the following relief:

A.  For an order finding in favor of Plaintiffs on all counts asserted herein;

B.     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

C.  For prejudgment interest on all amounts awarded;

D.  For an order of restitution and all other forms of equitable monetary relief;

E.  For injunctive relief, ordering Defendants to stop engaging in such unlawful acts, and to develop policies and procedures for preventing the recurrence of any such unlawful acts, including, but not limited to, requiring Defendant to declare on their packaging the words "contains milk" whenever sodium caseinate is an ingredient in their product, or as the Court may deem proper; and

F.  For an order awarding Plaintiffs treble damages, reasonable attorneys' fees and expenses and costs of suit in accordance with M.G.L. c. 93A.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

DATED: 2|6|18

Respectfully submitted,

Laurel Francoeur, BBO#633085
Francoeur Law Office
100 TradeCenter, Suite G700
Woburn, MA 01801
(781) 569-5369
Laurel@FrancoeurLaw.com

# EXHIBIT A





# EXHIBIT B

2/5/2018   Recalls, Market Withdrawals, & Safety Alerts > Giant Eagle Voluntarily Recalls Select Items Due to an Undeclared Milk Allergen

Case 1:18-cv-10453-IT   Document 1-2   Filed 03/08/18   Page 16 of 24

## Company Announcement

When a company announces a recall, market withdrawal, or safety alert, the FDA posts the company's announcement as a public service. FDA does not endorse either the product or the company.

# Giant Eagle Voluntarily Recalls Select Items Due to an Undeclared Milk Allergen

### For Immediate Release

June 12, 2017

### Contact

**Consumers**

Giant Eagle Customer Care
📞 1-800-553-2324

**Media**

Dan Donovan
✉ media.relations@gianteagle.com (mailto:media.relations@gianteagle.com)
📞 (412)967-4551

### Announcement

View Product Photos

Giant Eagle, Inc. has announced a voluntary recall of Market District Toasted Crumb Tilapia and Giant Eagle Toasted Crumb Tilapia sold fresh from the seafood department of its supermarkets, and Giant Eagle Breaded Chicken Breast sold in the prepared foods department, due to an undeclared milk allergen. People who have an allergy, or severe sensitivity to milk, may experience serious or life-threatening allergic reactions if they consume these products.

| Product Description | Impacted PLU (s) | Department | Dates Available In-store |
|---|---|---|---|

2/5/2018     Recalls, Market Withdrawals, & Safety Alerts > Giant Eagle Voluntarily Recalls Select Items Due to an Undeclared Milk Allergen

Case 1:18-cv-10453-IT   Document 1-2   Filed 03/08/18   Page 17 of 24

| Product Description | Impacted PLU (s) | Department | Dates Available In-store |
|---|---|---|---|
| Market District Toasted Crumb Tilapia | 09123 | Seafood | March 10 – June 9, 2017 |
| Giant Eagle Toasted Crumb Tilapia | 69123 | Seafood | March 10 – June 9, 2017 |
| Giant Eagle Breaded Chicken Breast | 86571 | Prepared Foods | June 3 – 10, 2017 |

There have been no reported illnesses associated with these recalls to date. These items are part of national, voluntary recalls issued by the product suppliers, Slade Gorton and Co., Inc. (Tilapia) and Gourmet Boutique LLC (Chicken).

Customers who have purchased the affected product should dispose of it or return it to their local Giant Eagle or Market District store for a refund. Customers with questions may call Giant Eagle Customer Care at 1-800-553-2324 Monday through Friday 9 a.m. to 9 p.m. EST.

In addition to this public communication regarding the recall, Giant Eagle initiated its consumer recall telephone notification process. The consumer recall process uses purchase data and consumer telephone numbers housed in the Giant Eagle Advantage Card database to alert those households that purchased the affected product and have updated telephone contact information in the database.

### 

**Follow FDA**

- 🐦 **Follow @US_FDA (https://twitter.com/US_FDA)** 🔗 **(/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm)**
- 📘 **Follow FDA (https://www.facebook.com/FDA)** 🔗 **(/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm)**
- 🐦 **Follow @FDArecalls (https://twitter.com/fdarecalls)** 🔗 **(/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm)**
- 📷 **Recent Recalled Product Photos on FDA's Flickr Photostream (https://www.flickr.com/photos/fdaphotos/sets/72157663245186459/)** 🔗 **(/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm)**

**Product Photos**

2/5/2018

Case 1:18-cv-10453-IT   Document 1-2   Filed 03/08/18   Page 18 of 24

Recalls, Market Withdrawals, & Safety Alerts > Giant Eagle Voluntarily Recalls Select Items Due to an Undeclared Milk Allergen





Case 1:18-cv-10453-IT   Document 1-2   Filed 03/08/18   Page 19 of 24



More in Recalls, Market Withdrawals, & Safety Alerts
(/Safety/Recalls/default.htm)

Archive for Recalls, Market Withdrawals & Safety Alerts (/Safety/Recalls/ArchiveRecalls/default.htm)    ˅

Enforcement Reports (/Safety/Recalls/EnforcementReports/default.htm)    ˅

Industry Guidance (/Safety/Recalls/IndustryGuidance/default.htm)

Major Product Recalls (/Safety/Recalls/MajorProductRecalls/default.htm)    ˅

Case 1:18-cv-10453-IT   Document 1-2   Filed 03/08/18   Page 20 of 24

2/5/2018   Recalls, Market Withdrawals, & Safety Alerts > Global Lamsheng Kee Inc. Issues Allergy Alert on Undeclared Egg in Frozen Fish Tofu, Frozen Fr...

## Company Announcement

When a company announces a recall, market withdrawal, or safety alert, the FDA posts the company's announcement as a public service. FDA does not endorse either the product or the company.

# Global Lamsheng Kee Inc. Issues Allergy Alert on Undeclared Egg in Frozen Fish Tofu, Frozen Fried Fish Ball and Frozen White Fish Ball

## For Immediate Release

June 27, 2017

## Contact

### Consumers

📞 1-718-501-1577

## Announcement

[ View Product Photos ]

Global Lamsheng Kee Inc., Brooklyn, NY is recalling Frozen Fish Tofu, Frozen Fried Fish Ball and Frozen White Fish Ball because they may contain undeclared egg. People who have allergies to egg run the risk of serious or life-threatening allergic reaction if they consume these products.

The recall includes the following products:

Lam Sheng Kee Frozen Fish Tofu NET WEIGHT: 240g (8.5OZ)
UPC CODE: 4712757550542

Lam Sheng Kee Frozen Fried Fish Ball NET WEIGHT: 227g (8OZ)
UPC CODE: 4712757550535

Lam Sheng Kee Frozen White Fish Ball NET WEIGHT: 32.1OZ (910g)
UPC CODE: 9555123702252

These products are sold frozen. The recall includes all lots that do not declare egg on the label.

The product was distributed at retail stores in Pennsylvania, New York, Virginia, Texas, Michigan and North Carolina.

No illnesses have been reported to date in connection with this problem.

The recall was initiated after it was discovered that the products contain major food allergen but not declared in the packaging and it can pose a health risk to certain sensitive individuals.

Production of the product has been suspended until FDA and the company is certain that the problem has been corrected.

Consumers who have purchased these products are urged to return them to the place of purchase for a full refund.

Consumers with questions may contact the company at 1-718-501-1577. Mon-Fri: 08:30AM-5:00PM.

### 

**Follow FDA**

- Follow @US_FDA (https://twitter.com/US_FDA) 
  (/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm)
- Follow FDA (https://www.facebook.com/FDA) 
  (/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm)
- Follow @FDArecalls (https://twitter.com/fdarecalls) 
  (/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm)
- Recent Recalled Product Photos on FDA's Flickr Photostream
  (https://www.flickr.com/photos/fdaphotos/sets/72157663245186459/) 
  (/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm)

**Product Photos**



2/5/2018    Recalls, Market... Withdrawals & Safety Alerts - | Global Gansheng Kee Inc. Issues Allergy Alert on Undeclared Egg in Frozen Fish Tofu, Frozen Fr...

Case 1:18-cv-10453-IT   Document 1-2   Filed 03/08/18   Page 23 of 24





**More in Recalls, Market Withdrawals, & Safety Alerts (/Safety/Recalls/default.htm)**

Archive for Recalls, Market Withdrawals & Safety Alerts (/Safety/Recalls/ArchiveRecalls/default.htm) ⌄

Enforcement Reports (/Safety/Recalls/EnforcementReports/default.htm) ⌄

**Industry Guidance (/Safety/Recalls/IndustryGuidance/default.htm)**

Major Product Recalls (/Safety/Recalls/MajorProductRecalls/default.htm) ⌄