**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| BRIAN HULT, an individual, and FIONA HULT, Plaintiffs | ) ) ) | |
| vs. | ) ) | C.A. No. 1:18-cv-10453-MPK |
| DANIELE INTERNATIONAL, a Rhode Island Corporation Defendant | ) ) ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## MOTION OF THE ASTHMA AND ALLERGY FOUNDATION FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Asthma and Allergy Foundation of America ("AAFA") respectfully submits this motion for leave to file an amicus curiae brief in support of Plaintiffs' Opposition to Defendant's Motion to Dismiss.

## ARGUMENT

### I. It is within this court's discretion to allow amicus curiae briefs

"District courts have broad discretion to appoint amicus curiae." *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999) (quoting *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993)); see also *Avellino v. Herron*, 991 F. Supp. 730, 732 (E.D.Pa. 1998). "Although there is no federal rule or statute governing participation by amicus curiae at the district court level, a federal district court has the inherent authority to invite participation by amicus curiae to assist the court in its proceedings. *United States v. Louisiana*, 751 F.Supp. 608, 620 (E.D. La. 1990); *United States v. Michigan*, 116 F.R.D. 655, 660 (W.D. Mich. 1987). The decision to invite or accept participation by

1

an amicus is committed to the sound discretion of the court. *Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C. 1974).

The classic role of the amicus curiae is to assist in a case of general public interest, supplement the efforts of counsel, and draw the court's attention to law that may otherwise escape consideration. *Miller-Wohl Co., Inc. v. Commissioner of Labor and Indus.*, 694 F.2d 203, 204 (9 Cir. 1982).

The District court in Massachusetts has typically allowed parties to file amicus briefs. See, e.g., *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, Class Action Master Case No. 3:11-md-02208-MAP (D. Mass., 2012); *City of New Bedford v. Locke,* Civil Action NO. 10-10789-RWZ (D. Mass., 2011); *AT&T Mobility LLC v. Princi*, Civil Action NO. 11-11448-RWZ (D. Mass., 2011). Neither party will be prejudiced by allowing AAFA to file an amicus brief.

II. <u>The Asthma and Allergy Foundation can provide helpful information to the Court that will not duplicate arguments presented by the parties.</u>

As the oldest asthma and allergy patient group in the world, AAFA is in a unique position to offer guidance to this court. AAFA has been dedicated to improving the quality of life for people with asthma and allergic diseases through education, advocacy and research since 1953. As such, AAFA has been involved with and advocated for most of the major pieces of legislation that have impacted the allergy community. Each year, AAFA compiles a report of the most allergy and asthma-friendly states called "The State Honor Roll." This report conducts an in-depth analysis of state and federal laws that affect our community and makes policy recommendations based upon its research. AAFA also has conducted surveys of its members to investigate how well certain laws, like the Food Allergen Labeling Consumer Protection Act, have been implemented and how they affect our community. Because of its familiarity with the

issues, AAFA is in a unique position to offer to the court not only a legal but a practical analysis of the case at bar.

AAFA's brief will discuss why consistent labeling of food products is vital to keeping people with life-threatening allergies safe. AAFA's brief provides statistics and information to show the national importance of this public health issue.  In addition, the brief advances the view that labeling laws and regulations should be viewed as broadly as possible to protect the health and safety of the consumer.

II.    <u>Plaintiffs have consented to AAFA's filing an amicus brief in this case.</u>

AAFA has discussed the desire to file an amicus brief with Plaintiffs' counsel, which is supported by the Plaintiffs. AAFA also consulted with Defendant by email but has not received a response as to the Defendant's position on this Motion.

<u>**CONCLUSION**</u>

For all the reasons discussed above, AAFA respectfully asks this court to allow it to file an amicus curiae brief in this case.

Date:   April 5, 2018

Respectfully submitted,
Asthma and Allergy Foundation of America

_/s/ Tim Sindelar

Tim Sindelar BBO# 557273
Law Office of Tim Sindelar
55 Chapel Street  Suite 301
Newton MA 02458
617 431 1201 x 101
tsindelar@hshmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed this MOTION OF THE ASTHMA AND ALLERGY FOUNDATION FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS through the ECF system and via direct email to Geoffrey W. Millsom, Esq. and Laurel J. Francoeur, Esq. on the 5th day of April, 2018, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for C.A. No. 1:18-cv-10453-MPK.

April 5, 2018                          /s/ Tim Sindelar

**ATTACHMENT A: PROPOSED AMICUS BRIEF**

**PROPOSED AMICUS BRIEF**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BRIAN HULT, an individual, and FIONA HULT,  )
Plaintiffs                                 )
                                           )
vs.                                        )          C.A. No. 1:18-cv-10453-MPK
                                           )
DANIELE INTERNATIONAL, a Rhode Island      )
Corporation Defendant                      )
_____    )

## AMICUS CURIAE BRIEF FOR THE ASTHMA AND ALLERGY FOUNDATION OF AMERICA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### CORPORATE DISCLOSURE STATEMENT

Amicus curiae is a not-for-profit organization.  It has no parent corporations and does not issue stock.

### STATEMENT OF INTEREST

The Asthma and Allergy Foundation of America (AAFA), a not-for-profit organization founded in 1953, is the leading patient organization for people with asthma and allergies, and the oldest asthma and allergy patient group in the world. AAFA is dedicated to improving the quality of life for people with asthma and allergic diseases through education, advocacy and research. AAFA is certified by the National Health Council's Standards of Excellence Certification. This is given to reliable patient groups that practice high standards of accountability and ethics.

AAFA has a strong interest in this case. AAFA educates, supports and advocates for people who have asthma and allergic disease, including those with life-threatening food allergies.

Since 2004, the Food Allergen Labeling and Consumer Protection Act ("FALCPA")(Public Law 108-282, Title II) has provided some protections for those with food allergies by requiring the top eight allergens (milk, eggs, fish, Crustacean shellfish, tree nuts, peanuts, wheat, and soybeans) to be clearly labeled as ingredients. FALCPA has been a tremendous help to our members, but it has some gaps. One of the issues that has fallen into the gap is the clear labeling of processed meat.  The resolution of the Motion to Dismiss in this proceeding may have a significant impact on the ability of persons with allergies to make important life-affecting decisions about product purchases and consumption.

## **INTRODUCTION**

Despite the improvements to food labeling for the eight major allergens following the implementation of Food Allergen Labeling and Consumer Protection Act (FALCA), there remain numerous loopholes and complexities in the existing labeling regulations that still confuse consumers.  For example, foods can be labeled "nondairy" yet contain sodium caseinate, a milk ingredient. Or, that FALCPA allows for the manufacturer to list the major allergens in a "Contains" statement OR in the list of ingredients – but consumers may only look for a contains statement and not look through the list of ingredients.

The issue presented in the case at bar is an important one that needs to be addressed, namely, what are the labeling requirements for processed foods made of meat but have an allergen added to them? Families are often struggle to create a safe environment for their children with food allergies. Reading food labels (to assess allergens) can be challenging, and safe foods may not be readily available or affordable. AAFA strongly believes that there should be consistent enforcement and implementation of labeling laws. Not only is in important, but it also is an issue of life or death for our members.

## ARGUMENT

A.  LABELING OF CONSUMER FOODS NEEDS TO BE UNIFORM AND EASILY
     UNDERSTOOD

i.        Food Allergy Statistics

Allergic conditions are the most common health issues affecting children in the U.S.[1] The

statistics are staggering. People visit the emergency room about 200,000 times each year because

of food allergies. Almost 10,000 people stay in the hospital each year because of food allergies[2]

Food allergies cost about $25 billion each year.[3]   Eight foods cause most food allergy reactions.

They are milk, soy, eggs, wheat, peanuts, tree nuts, fish and shellfish. Peanut is the most

common allergen followed by milk and shellfish.[4]  In 2015, 4.2 million children in the US had

food allergies.[5] In 2014, 5.4% of US children under age 18 had food allergies.[6]

The eight foods identified as the cause of most allergic reactions are the same foods that

are required to be labeled in FALCPA.  There is no threshold amount of an allergen that can

---

[1]CDC. Healthy Schools.  Food Allergies in Schools:
https://www.cdc.gov/healthyschools/foodallergies/index.htm (Retrieved September 15 2017)

[2] Clark S, Espinola J, Rudders S, etc. Frequency of US emergency department visits of food-related acute allergic reactions. J Allergy Clin Immunol. March 2011. http://www.jacionline.org/article/S0091-6749(10)01655-6/pdf (Retrieved September 15 2017)

[3] Gupta R, Holdford D, Bilaver L, etc. The economic impact of childhood food allergy in the United States. Jama Pediatr. 2013 Nov; 167(110)  http://www.ncbi.nlm.nih.gov/pubmed/24042236 (Retrieved September 14 2017)

[4] American Academy of Allergy Asthma and Immunology. Allergy Statistics. http://www.aaaai.org/about-aaaai/newsroom/allergy-statistics (Retrieved September 14 2017)

[5] CDC. National Center for Health Statistics. FastStats: Allergies and Hay Fever.
https://www.cdc.gov/nchs/fastats/allergies.htm (Retrieved September 14 2017)

[6] American College of Allergy, Asthma, and Immunology. Allergy Facts. http://acaai.org/news/facts-statistics/allergies (Retrieved September 14 2017)

cause a reaction. There is currently no cure or treatment to prevent food allergies. The only way to avoid a reaction is to not eat the allergenic food. Anaphylaxis is a serious allergic reaction that is rapid in onset and may cause death.

ii.   History Of Labeling Laws

Before FALCPA's passage in 2004, food producers were not required to inspect or label their foods for allergens. In 1990, congress passed the Nutrition Labeling and Education Act which required labels to include nutritional information and to list all ingredients.[7] In 1996, the FDA released a Notice Letter to food producers which explained that known food allergens had to be listed on labels and could not be exempted.[8]   However, manufacturers were not always compliant, as observed in an FDA-conducted a study in 1999 that found that twenty-five percent of sampled baked goods in Minnesota and Wisconsin failed to list peanuts or eggs as ingredients on their food labels, despite being present in the foods. CITE

In 2001, the FDA released a report titled "Guidance on Inspections of Firms Producing Food Products Susceptible to Contamination with Allergenic Ingredients," which outlined practices for manufacturers to follow for avoiding cross-contact with their products and allergens.[9] This document provided some help for manufacturers.

---

[7] 21 U.S.C. §§ 301–343 (2012)

[8] See CTR. FOR FOOD SAFETY & APPLIED NUTRITION, FDA, LABEL DECLARATION OF ALLERGENIC SUBSTANCES IN FOODS; NOTICE TO MANUFACTURERS (1996) [hereinafter FDA WARNING LTR.], available at http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/Allergens/ucm106546.htm ("FDA asks manufacturers to examine their product formulations for ingredients and processing aids that contain known allergens that they may have considered to be exempt . . . and to declare the presence of such ingredients in the ingredient statement.")

[9] FDA, GUIDANCE ON INSPECTIONS OF FIRMS PRODUCING FOOD PRODUCTS SUSCEPTIBLE TO CONTAMINATION WITH ALLERGENIC INGREDIENTS (2001), available at http://www.fda.gov/ICECI/Inspections/InspectionGuides/ucm074944. html; see also Guidance on Inspections of

In 2004, Congress, with the help of many non-profit advocacy groups including AAFA, signed FALCPA into law. FALCPA was the first law to require mandatory allergen labeling of the "big eight" allergens – peanuts, tree nuts, egg, soy, milk, wheat, fish and shellfish.

In 2011, President Barack Obama signed into law an amendment to the FFDCA called the FDA Food Safety Modernization Act (FSMA). This Act explicitly declared allergens to be "food safety hazards" and required food manufacturers to "implement preventive controls to significantly minimize or prevent" the hazard of allergens through the use of comprehensive plans to prevent cross-contamination.

More recently, the United States Department of Agriculture (USDA) has recognized the need for clear labelling of allergens in meat and poultry products to the extent such procudet smay not be covered by FALCPA.  In April 2014, the Food Safety and Inspection Service of the USDA promulgated Compliance Guidelines for Allergens and Ingredients of Public Health Concern: Identification, Prevention and Control and Declaration through Labeling, Doc.  79 FR 22083.  This guidance was updated and reissued in November 2015, 80 FR 70747. [10]

The Guidance "presents best practice recommendations by FSIS, based on the best scientific and practical considerations." *Id*. at p.1.   The Guidance notes, citing the Center for Disease Control, the following trends:

- The Centers for Disease Control and Prevention (CDC) reports that approximately four out of every 100 children has a food allergy

---

Firms Producing Food Products Susceptible to Contamination with Allergenic Ingredients; Availability, 66 Fed. Reg. 42,869, 42,869 (Aug. 15, 2001) ("This guidance will assist FDA investigators and inspectors in evaluating conditions that may result in the introduction of undeclared allergens in food.").

[10] Available at https://www.fsis.usda.gov/wps/wcm/connect/f9cbb0e9-6b4d-4132-ae27-53e0b52e840e/Allergens-Ingredients.pdf?MOD=AJPERES.

- The prevalence of reported food allergies has increased. CDC reports an increase of 18% from 1997 to 2007 among children

- The average number of hospital discharges per year related to food allergy diagnosis has increased significantly from 1998 to 2006 among children with approximately 9,500 hospital discharges yearly from 2004 to 2006 (CDC)

- An estimated 29,000 episodes of anaphylaxis related to food occur in the United States each year, resulting in approximately 150 deaths

The Guidance further observed that "the number of recalls of FSIS-regulated product attributed to undeclared allergens and ingredients of public health concern has increased from 7 in 2008 to 29 in 2012."

The Guidance notes that FALCPA requires that products under the jurisdiction of the FDA must identify allergens from the "Big Eight" and goes on to state that "FSIS supports the voluntary addition of allergen statements (e.g. "contains" statements) on meat and poultry product labels immediately following the ingredients statement as discussed in the FSIS Compliance Assistance: Allergens-Voluntary Labeling."

The Guidance also emphasizes that "9 CFR 317.2(b) and 9 CFR 381.116(a) require that the ingredients statement on the label be prominently placed with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use. The ingredients statement must also identify the common or usual names of the ingredients arranged in descending order of predominance. A complete and accurate ingredients statement is essential with the presence of an allergen."  These requirements are consistent with those of FALCPA.

Although these laws (and guidance) have helped the food allergy community tremendously, there remain gaps and much confusion among consumers about label reading.[11] Consumers will best be served by interpretations of relevant laws that assure consistence in the labeling of food.

iii. <u>Dangers in confusion about label reading</u>

In 2009, AAFA conducted a survey of over 2500 people with a food allergy or people with a child with food allergy. The survey found that 90% "always" read the ingredient list on food packages and over 90% would never consume a product that listed an allergen in the ingredients.[12] Thus it is important that foods be labeled accurately and clearly so that people can make decisions to avoid products with allergens and stay safe.

One of the issues causing confusion is the lack of regulation with regard to advisory statements such as "May Contain" or "Produced in a Facility." A study published in the *Journal of Allergy and Clinical Immunology: In Practice* in 2017 found that there is much confusion about food labels in the public.[13]  The results of this study are nicely summarized in an article on October 2016 written by the Chicago Children's Hospital. See:

---

[11] See: Jonathan B. Roses *, Food Allergen Law and the Food Allergen Labeling and Consumer Protection Act of 2004: Falling Short of True Protections for Food Allergy Sufferers,* 66 Food and Drug L.J. 225 (2011).
[12] See ASTHMA & ALLERGY FOUND. OF AM., REPORT OF THE FOOD ALLERGEN LABELING SURVEY 2 (2009), available at http://www.aafa.org/pdfs/Allergen%20Labeling%20Report%20Final% 202009.pdf.

[13] Food Allergen Labeling and Purchasing Habits in the United States and Canada, Mary Jane Marchisotto, MBA, et al., *Journal of Allergy and Clinical Immunology: In Practice*,  March–April, 2017, Volume 5, Issue 2, Pages 345–351.

https://www.newswise.com/articles/confusing-food-labels-place-consumers-with-food-allergy-at-risk[14]

Another study showed that most parents of children with food allergies could not recognize that the word "casein" referred to a milk product. [15]

Attached to this brief are pictures of labels from processed meat in Exhibit A. These pictures all show the disparity among meat producers in their labels for processed meat.  When consumers are presented with confusing and confounding information on food labels, they are unable to make informed choices to protect their health.  Clear, consistent labelling of all food products is needed to prevent further injuries and death due to the consumption of food containing allergens.

### B.  FOOD PROTECTION LAWS SHOULD BE LIBERALLY APPLIED TO PROTECT PUBLIC HEALTH.

The Supreme Court recognized the public health importance of proper labelling of food products in *Federal Security Administrator v. Quaker Oats*, 63 S.Ct. 589, 87 L.Ed. 724 (1943) when it upheld FDA regulations establishing "standards of identity" for various milled wheat products.  In doing so, the Court relied upon Congressional intent to require "standards of identity of a food, sold under a common or usual name, so as to give to consumers who purchase

---

[14] This confusion applies to the food industry as well. The FDA in its April 2008 Guidance for Industry a Food Labeling Guide, 2008 WL 2144725 (F.D.A.) specifically addressed the "containing" statement in Responding to question F. 15, responding that  "[I]f a "Contains" statement is used on a food label, the statement must include the names of the food sources of all major food allergens used as ingredients in the packaged food. For example, if "sodium caseinate," "whey," "egg yolks," and "natural peanut flavor" are declared in a product's ingredients list, any "Contains" statement appearing on the label immediately after or adjacent to that statement is required to identify all three sources of the major food allergens present (e.g., "Contains milk, egg, peanuts") in the same type (i.e., print or font) size as that used for the ingredient list."

[15] See:  Preeti Joshi et al., *Interpretation of Commercial Food Ingredient Labels by Parents of Food-Allergic Children*, 109(6) J. ALLERGY CLIN. IMMUNOL. 1019, 1020 (2002); FOOD STANDARDS AGENCY (UK), Understanding of Food Labelling Terms, p.46  (2010) available at
https://www.food.gov.uk/sites/default/files/multimedia/pdfs/publication/understandfoodlabelling.pdf.

it under that name assurance that they will get what they may reasonably expect to receive." *Id* at 232.  In enacting FALCPA, Congress sought to achieve a similar purpose.  FALCPA should be read as broadly as possible by this Court, particularly in addressing a Motion to Dismiss, so as to not frustrate this purpose.  To allow a processed meat product that contains one of the "big eight" food allergens to escape the requirements of proper informative labeling would not further the intent of Congress.  This is particularly true as now more and more food products from meat companies contain allergens as additives. [16]

Walter G. Campbell, Chief of the Food and Drug Administration stated in 1934, that "[O]ur thought has been that the purchaser of food products, the one who is going to take those food products into his system, is entitled, as a matter of simple right, to know what he is eating."[17] The regulation of food has evolved over the last century, driven both by consumer demand and by an increasing awareness of allergens and other food attributes.  For people with food sensitivities, the FALCPA is a remarkable achievement. However, if it is narrowly applied, it cannot measure up to the potential for protection that Congress intended.  *"The expectation of a safe food supply for all is an American right.*" H. Res. 309, 106th Cong. (1st Sess. 1999), introduced by Representative Constance Morella (D-MD).  This Court should act in the interest of public health and deny the Motion to Dismiss in this matter.

## CONCLUSION

---

[16] *See* Chris Bodendorfer, Jennifer Johnson & Sue Hefle, *Got (Hidden) Food Allergens?*, NAT'L PROVISIONER, Oct. 2004, http:// www.nationalprovisioner.com/content.php?s=NP/2004/10&p=8

[17] *Hearing Before the S. Comm. on Commerce*, 73d Cong. (1934) (statement of Walter G. Campbell, Chief of FDA), *reprinted in* CHARLES WESLEY DUNN, FEDERAL FOOD, DRUG, AND COSMETIC ACT: A STATEMENT OF ITS LEGISLATIVE RECORD 1176 (1987).

For the forgoing reasons, the Defendant's Motion to Dismiss should be denied.


Respectfully Submitted,
Asthma and Allergy Foundation of America


By_____
Tim Sindelar BBO# 557273
Law Office of Tim Sindelar
55 Chapel Street  Suite 301
Newton MA 02458
617 431 1201 x 101
tsindelar@hshmlaw.com


CERTIFICATE OF SERVICE


I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on

# EXHIBIT A



NO By-Produc
Artificial Flavors · NO A

## Lean Beef Salami

INGREDIENTS: BEEF, WATER, CONTAINS 2% OR
LESS OF: MODIFIED CORN STARCH, SODIUM
LACTATE, SALT, HYDROLYZED SOY PROTEIN,
SPICE, POTASSIUM CHLORIDE, SODIUM
PHOSPHATE, SODIUM DIACETATE, FLAVORING,
SODIUM ERYTHORBATE, SODIUM NITRITE, PAPRIKA,
CONTAINS: SOY.

ConAgra Foods
Food you love
P.O. BOX 3768, DEPT. HN
OMAHA, NE 68103-0768 U.S.A.

UNDER RABBINICAL SUPERVISION OF

**Facts**
Slices (57g)
Container: About 3

Calories from fat 45
% Daily Value*

| | 8% |
| 2g | 10% |
| 0mg | 10% |
| g | 21% |
| 80mg | 8% |
| ydrate 1g | 0% |

Iron 6%

Reggiano or Grana Padano

le Ale

**INGREDIENTS:**

**CALABRESE:** PORK, SALT, NONFAT DRY MILK, SUGAR, CORN SYRUP, WINE, RED PEPPER, SPICES, CHILI PEPPER, GARLIC POWDER, LACTIC ACID STARTER CULTURE, SODIUM NITRITE, SODIUM NITRATE.

**GENOA SALAME:** PORK, SALT, SUGAR, WINE, SPICES, DEXTROSE, GARLIC, ASCORBIC ACID, LACTIC ACID STARTER CULTURE, ROSEMARY EXTRACT, SODIUM NITRITE, SODIUM NITRATE.

**ITALIAN DRY SALAME:** PORK, NONFAT DRY MILK, SALT, SUGAR, CORN SYRUP, SPICES, WINE, GARLIC POWDER, LACTIC ACID STARTER CULTURE, SODIUM NITRITE, SODIUM NITRATE.

**SOPRESSATA:** PORK, SALT, CORN SYRUP, WINE, SUGAR, SPICES, FENNEL SEED, CHILE UCTICA, GARLIC, DEXTROSE, ASCORBIC ACID, LACTIC ACID STARTER CULTURE, SODIUM NITRITE, SODIUM NITRATE.

CONTAINS MILK.

COLUMBUS SALUMERIA, Hayward, CA 94544

QUESTIONS or COMMENTS:
Visit us at www.columbuscraftmeats.com

SERVING SUGGESTION. –

oz (28g)
3

90
60

ily Value
11%
13%

8%
18%
0%
0%

0%
20%
0%
2%

# COLUMBUS.

*Since 1917, we have pursued our passion for craft meats w
a deep respect for our San Francisco heritage and a stubb
commitment to making great meat.*

# CALABRESE
## SALAME

## PAIRING GUIDE



- *Mahon*
- *Barolo*
- *Wheat beer*

☑ **GLUTEN FREE**   ☑ **NO MSG**

**INGREDIENTS:** PORK, SALT, NONFAT DRY MILK, SUGAR, CORN SYRUP,
WINE, RED PEPPER, SPICES, CHILI PEPPER, GARLIC POWDER, LACTIC
ACID STARTER CULTURE, SODIUM NITRITE, SODIUM NITRATE.

**CONTAINS: MILK**

Columbus Salumeria,          Questions or comments
Hayward, CA 94544            www.ColumbusCraftMeats.com
                             855-566-2800

## Nutrition Fact

Serving Si
Servings Per C

**Amount Per Serving**

**Calories** 90      Calories from

% Da

**Total Fat** 6g

   Saturated Fat 2g

   *Trans* Fat 0g

**Cholesterol** 25mg

**Sodium** 460mg

**Total Carbohydrate** 2g

   Dietary Fiber 0g

   Sugars 1g

**Protein** 6g

Vitamin A 2%      ·      Vitam

Calcium 2%       ·

*Percent Daily Values are based on a 2,00
diet. Your daily values may be higher or l
depending on your calorie needs.

| | Calories | 2,000 |
|---|---|---|
| Total Fat | Less Than | 65g |
| Sat Fat | Less Than | 20g |
| Cholesterol | Less Than | 300mg |
| Sodium | Less Than | 2,400mg |
| Total Carb | | 300g |
| Dietary Fiber | | 25g |





with MOZZARELLA CHEESE

RAL*

'No Artificial Ingredients

'Minimally Processed

Gluten Free

No MSG

No Nitrites"

Chicken Raised Without Added Hormones†

PT THOSE NATURALLY OCCURRING IN RY POWDER

RAL REGULATIONS PROHIBIT THE USE ROWTH HORMONES IN CHICKEN

## Nutrition Facts

Serving Size: 1 link (85g)
Servings Per Container: 4

**Amount Per Serving**

**Calories** 160   Calories from Fat 100

|  | % Daily Value* |
|---|---|
| **Total Fat** 11g | **18%** |
| Saturated Fat 4g | **17%** |
| Trans Fat 0g | |
| **Cholesterol** 90mg | **30%** |
| **Sodium** 570mg | **24%** |
| **Total Carbohydrate** 2g | **1%** |
| Dietary Fiber less than 1g | **0%** |
| Sugars less than 1g | |
| **Protein** 14g | |

| | | | |
|---|---|---|---|
| Vitamin A 4% | · | Vitamin C 2% | |
| Calcium 8% | · | Iron 6% | |

*Percent Daily Values are based on a 2,000 calorie diet

INGREDIENTS: CHICKEN, MOZZARELLA CHEESE (PASTEURIZED MILK, CHEESE CULTURES, SALT, ENZYMES, ANTI-CAKING AGENT), PARSLEY, ROASTED GARLIC (WITH OLIVE OIL), SALT, SPICES, VINEGAR, PAPRIKA, SUGAR, BASIL, AND CELERY POWDER, IN A PORK CASING.

## CONTAINS: MILK

DISTRIBUTED BY AIDELLS SAUSAGE COMPANY SAN LORENZO, CA 94580